### Closing of Registration Rolls Prior To Special Election

PACKEL, Attorney General, December 31, 1973.— You have requested our opinion as to whether regis-

tration of electors must cease 30 days prior to the special election called by the Governor for February 5, 1974, to fill the vacant seat in the Twelfth United States Congressional District. It is our opinion, and you are hereby advised that, except in the City of Philadelphia, electors may continue to register for a special election at the office of their respective registration commissions until the end of ordinary business hours of the fourth day preceding a special election, and that the registration rolls thereafter must be closed.

The days and hours of registration outside the City of Philadelphia are governed by section 16(a) of The Permanent Registration Act for Cities of the Second Class, Cities of the Second Class A, Cities of the Third Class, Boroughs, Towns and Townships, Act of April 29, 1937, P. L. 487, as amended, 25 PS §951-16(a), Permanent Registration Act. Section 16(a) provides, in pertinent part, that registration shall be open during the ordinary business hours of each day:

"except Sunday, holidays, the day of each election and each primary, the thirty days next preceding each general, municipal and primary election, and the thirty days next following each election and the five days next following each primary."

A careful reading of this provision reveals that registration is required to be closed during the 30 days before three specified types of elections: general, municipal and primary elections. However, section 2(d) of the Permanent Registration Act, 25 PS §951-2(d) defines the term "election" to include four kinds of elections, to wit, "any general, special, municipal or primary election, unless otherwise specified." While the 30-day closure of registration rolls is required by the Legislature for three of the enumerated kinds of elections, section 16(a) is silent with

regard to the fourth kind of election. Thus, there is no requirement of the Legislature that the registration rolls be closed during the 30 days next preceding a special election.

It is useful to compare section 16(a) above with section 17(a) of the First Class City Permanent Registration Act of March 30, 1937, P. L. 115, as amended, 25 PS §623-17(a). Section 17(a), which applies to the City of Philadelphia, makes the same type of provision for closing of the registration rolls 30 days next preceding general, municipal and primary elections. It does not, however, remain silent as to special elections:

"Provided, however, That in case of a special election within a certain district (congressional, senatorial or representative), held on a day other than the day of a primary, general or municipal election, the registration of electors shall be discontinued in the wards comprising such a district for the period of thirty-five days prior to and the five days next following such special elections": 25 PS §623-17(a).

This clear mandate from the General Assembly to close registration rolls prior to a special election is in sharp contrast to the absence of a corresponding requirement for the closing of registration rolls prior to a special election held outside of the City of Philadelphia. In the absence of such a provision, we must determine whether there exists any other section which forecloses the right to register.

In making this determination, we must bear in mind that we are dealing with the ever important right to vote, a prerequisite of which is registration under Pennsylvania law. There can be no question that because of the "fundamental" nature of the right to vote, every presumption must be given to securing the right, and the Legislature cannot be deemed to

restrict or proscribe the exercise of the right unless it does so in clear and unmistakable terms: Dunn v. Blumstein, 405 U.S. 330, 92 S. Ct. 995 (1972); Kramer v. Union Free School District No. 15, 395 U.S. 621, 89 S. Ct. 1886 (1969); Harper v. Virginia Board of Elections, 383 U.S. 663, 86 S. Ct. 1079 (1966).

In the present instance, we have legislation which is, at best, silent on the question of time in which to register. Moreover, we are here concerned with special elections, which come about because of some unforeseen event such as resignation or removal from office, or death of the incumbent, as was the case in the Twelfth Congressional District. Residents of the district for which a special election must be held do not have a statutorily fixed date by which they must take steps to insure that they have protected their right to participate in the election. In this circumstance, it becomes most important to make available the longest time possible in which persons can secure the ability to participate in special elections.

While it is apparent that the Permanent Registration Act does not permit county registration commissions to cease registration of electors 30 days before a special election, the act does not impose upon them the burden of conducting registration up to and including the day of election. Section 36(a) of the Permanent Registration Act provides that:

"Any person whose name is in the district register of any election district . . . shall be entitled to vote in such district at any general, municipal or special election": 25 PS §951-36(a).

The importance of the district register is two-fold: it serves as the means for verifying the signatures of electors on the voters' certificates, and later as

a ballot check list verifying the number of persons who voted. See 25 PS §951-36(a), (g).

Under section 35 of the Permanent Registration Act, the registration commission is required to deliver the district register to the election officers of each election district "[n]ot later than noon of the third day preceding an election or primary": 25 PS §951-35(a). The prescribed physical condition of the district register upon delivery is instructive:

"District registers, when so delivered, shall be contained in *suitable binders so constructed and locked* that the name, address, voting record, and other data on each card may be visible, and that entries may be made on each card, *but that the cards cannot be removed by the election officers . . .* Said binders shall be enclosed within a case or container and shall be *locked and sealed* by the commission before delivery": 25 PS §951-36(b). (Italics supplied.)

Since the district register must be locked in the above fashion, no additions or deletions may be made to the number of registered voters once the register leaves the commission office. Accordingly, no registration of electors can take place at the election districts.

The question still remains whether there are any other provisions of the Permanent Registration Act which require the closing of the registration rolls at some time earlier than shortly before the district register must be delivered to the election districts. Commencing 30 days prior to each election and primary, a registration commission must begin the process of preparing the district register for delivery to the election districts, including the preparation and distribution of street lists. Section 32 of the act,

25 PS §951-32, requires the commission to compare and correct the general and district registers, while section 33, 25 PS §951-33, requires the preparation of street lists which may be utilized by organized political parties and committees, as well as interested citizens, for the purposes of verifying registration information and forestalling election frauds. In addition, under section 34, 25 PS §951-34, at any time not later than the tenth day preceding any election or primary, any qualified elector may petition the commission to cancel or suspend the registration of any registered elector, and if such petition is granted, the general and district registers are to be amended accordingly.

Unlike the locking of the district register and its delivery to the election district, these procedures do not preclude concurrent registration. After the street lists are prepared and circulated, there is no impediment to entering additional names upon the general and district registers. Although such names would not be on the street lists, they would still be subject to challenge at the polls, upon a showing to election officers that the elector "has become disqualified by removal from the district since registration": 25 PS §951-36(a). Since the purposes underlying sections 32 through 34 of the act are thereby served, there is no justification for requiring a halt to registration either 30 or 10 days prior to a special election. Accordingly, we are constrained to conclude that the only legitimate line to be drawn is at the time the district registers must be secured and delivered to the election districts.

In the context of registration for November elections, the courts have not hesitated to extend the time for registration. In Sloane v. Smith, 351 F. Supp. 1299 (M.D. Pa. 1972), a Federal Court ordered the

Centre County Commissioners to allow students of the Pennsylvania State University to register for an additional five-day period in October, less than 30 days before the election. Accord, Fair v. Osser, Civil Action No. 71-2212 (E.D. Pa. 1971) (three-judge court; unreported order). In Wenner's Appeal, 54 D. & C. 223 (1945), the Court of Common Pleas of Lehigh County required registration officials to keep offices open for the purpose of registering veterans who had returned from active service in World War II but who did not return before the date when registration closed. The court ordered that applications for registration be accepted until the day before the election, observing that despite the inconvenience to the registration commission caused by its ruling, it would present no problems impossible of solution.

The legislature's silence with regard to closing registration before a special election requires that we interpret the existing provisions of the Permanent Registration Act so as to reconcile in the most reasonable way possible the various competing legal considerations. We have attempted to accommodate the important public interest of making the franchise as broadly accessible as possible for a special election with the demands the legislature has placed upon registration commissions to fulfill the various express duties required of them by the Registration Act. By permitting registration up to the end of business hours of the fourth day preceding the special election, i.e., Friday, February 1, 1974, registration commissions will be affording prospective electors an extensive opportunity to register. At the same time, the registration commissions should have sufficient opportunity to prepare and deliver the district registers by noon of the following day.